OPINION
Kevin Colter appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of domestic violence.
The state's evidence established the following scenario. Colter and his girlfriend, Amber Wilt, had known each other for two years and had lived together intermittently, mostly living with friends because neither one had a permanent residence. In May 1998, Colter pled no contest to and was convicted of domestic violence based on an April 1998 incident involving Wilt. Colter was sentenced to 180 days with work release privileges.
On July 3, 1998, while Colter was serving time in the Dayton Human Rehabilitation Center ("the workhouse") on the domestic violence conviction, he left the workhouse early in the morning under the pretense of going to work. Instead, he went to the apartment where Wilt was staying. They talked, went to pick up Colter's paycheck, ate, and did some shopping. Colter bought several items of clothing for Wilt. They then visited the homes of some friends. During these visits, one of Colter's friends apparently suggested to him that Wilt had become involved with another man. Subsequently, Colter began to hit Wilt about the head as they were driving around town in Colter's car. At some point during the beating, Colter ordered Wilt to change out of the new shirt that she was wearing so that she would not get blood on it. She complied, and he hit her again. While Colter and Wilt were driving along Interstate 75, Colter also threatened to "throw [Wilt] into the lime pit where nobody would ever find [her]."
Around 10:00 p.m., with Wilt still in the car, Colter returned to the workhouse. He parked the car, took the keys, and told Wilt to spend the night in the car. After Colter entered the building, Wilt drew the attention of a corrections officer and asked him to summon an ambulance. Wilt had suffered a concussion, some "loose" bones in her nose, two black eyes, "a busted mouth," and loss of vision in one eye.
In January 1999, Colter was charged with domestic violence relating to the events of July 3, 1998. Because Colter previously had been convicted of domestic violence, the offense was classified as a felony of the fifth degree. A bench trial was conducted and Colter was found guilty on May 10, 1999. He was sentenced to ten months in the Corrections Reception Center. Additionally, as a result of Colter's conviction, the trial court revoked his probation in an unrelated case and reimposed the eighteen month sentence, which it ordered to be served consecutively with the sentence in the case at hand.
Colter raises one assignment of error on appeal.
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING APPELLANT'S MOTION FOR A CRIMINAL RULE TWENTY-NINE JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.
Colter contends that the state's evidence was insufficient to support his conviction. In particular, he argues that the nature of his relationship with Wilt did not justify treating her as a member of his family or household.
R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family or household member" is defined so as to include a spouse, a person living as a spouse, or a former spouse of the offender. R.C. 2919.25(E)(1)(a)(i). A "person living as a spouse" is further defined as a person who is living with or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question. R.C. 2919.25(E)(2).
For purposes of this appeal, Colter does not dispute that he caused physical harm to Wilt. Rather, he contends only that Wilt was not a member of his family or household. Specifically, he contends that the state presented insufficient evidence that Wilt was a person living as his spouse. The parties agree that they were not and had never been married.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
Because the General Assembly believed that an assault involving a family or household member deserved further protection than an assault on a stranger, "the offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances." State v. Williams, 79 Ohio St.3d 459,463-464. Cohabitation is the central element of the R.C.2919.25(E)(2) definition of a person living as one's spouse. The supreme court has held that the essential elements of cohabitation are the sharing of familial or financial responsibilities and consortium. Id., paragraph two of the syllabus. Colter concedes that "the `consortium' requirement * * * was met, i.e. both parties admit that they were friends, provided society and aid to one another and had conjugal relations." Colter insists, however, that he and Wilt did not share familial or financial responsibilities as spouses would do.
Possible factors establishing shared familial or financial responsibilities include provisions for shelter, food, clothing, utilities, and commingled assets. Williams, 79 Ohio St.3d at 465. These factors are unique to each case, and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact. Id. The burden of establishing cohabitation is not substantial. State v. Young
(Nov. 20, 1998), Montgomery App. No. 16985, unreported. In determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(E)(2), "courts should be guided by common sense and ordinary human experience." Id.
It is axiomatic that, in determining whether the trial court properly overruled Colter's Crim.R. 29(A) motion for acquittal at the close of the state's case, we must confine our review to the evidence presented in the state's case in chief. We note that the state's brief relies on evidence presented throughout the case. Although we recognize that some of the most compelling evidence of shared familial and financial responsibilities came from Colter's testimony-i.e., that he had arranged for Wilt to stay with a friend while he was in the workhouse and that he had paid the friend rent on Wilt's behalf-we will consider only the evidence that was before the court when it ruled on Colter's motion for acquittal at the end of the State's case in chief.
The state presented unrefuted evidence without objection that, in May 1998, Colter pled no contest to, and was found guilty of, domestic violence based upon an incident in which Wilt was the alleged victim. This conviction was evidence that, at least at that time, Wilt had been a person living as Colter's spouse. Based on this evidence, and because the prior offense had occurred within five years of the date of the offense at issue in this case, a reasonable factfinder could have found that Wilt had satisfied the statutory definition of a person living as Colter's spouse based on Colter's conviction in the previous case.
Wilt's testimony also supported the conclusion that Colter and Wilt had shared familial and financial responsibilities. Wilt testified that she and Colter had lived together on and off for several months, mostly staying together with friends because neither of them had a permanent residence. Wilt also stated that Colter had bought clothes for her. Wilt further testified that Colter had hit her because he believed that she had been unfaithful to him and that she had been pregnant with his child at the time of the attack. Relying on common sense and ordinary human experience, the trial court could have reasonably concluded that Colter and Wilt had shared familial and financial responsibilities, albeit not in the traditional fashion. Thus, the trial court did not err in finding that sufficient evidence had been presented to support a conviction for domestic violence.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.